BARNETT SMITH, plaintiff in error, vs. T. L. HARRIS, defendant in error.

BRAZELTON MORGAN, plaintiff in error, vs. SCOTT R. BONHAM, defendant in error.

Under the act of the Confederate Congress, approved 17th February 1864, entitled, " An act to organize forces to serve during the war," a person enrolled for military service whilst under fifty years of age, is entitled to his discharge from the army upon attaining that age.

Decisions on *Habeas Corpus.*   By Judge RICHARD H. CLARK.   At Chambers.   February and March 1865.

In the Supreme Court, these two cases were heard together. They involved the construction of the act of Congress, approved February 17th, 1864, entitled, " An act to organize forces to serve during the war."

At the passage of that act the plaintiffs in error were both under fifty years of age; and they had both passed beyond that age when these writs of *habeas corpus* were sued out.

Smith was a member of a company in the Georgia Reserves, having entered the same as a conscript; and while so in service he attained to, and passed the age of fifty. The writ of *habeas corpus*, in his case, was directed to Harris, the officer commanding the company to which he belonged.

Morgan, the other plaintiff in error, had not been put into actual service, but had applied, some time in the year 1864, for a detail, with what result the record does not disclose. The writ, in his case, was directed to Bonham, the Provost Marshal of the city of Albany.

Judge Clark, by whom the writs were issued, decided at the return thereof, that the plaintiffs in error, respectively, were still subject to military duty; and he remanded them accordingly.

N. A. Smith and H. Morgan, for plaintiffs in error.

Hall and Vason, Davis & Co., for defendants.

*By the Court.*—Jenkins, J. delivering the opinion.

These cases depend upon the construction to be given to the first section of the act of February 17, 1864, entitled, "An act to organize forces to serve during the war." It is in the following words: "From and after the passage of this act, all white men, residents of the Confederate States, between the ages of seventeen and fifty years, shall be in the military service of the Confederate States for the war."

Our brother of the Court below held that a man between the specified ages at the time of the passage of the act, although over forty-nine years of age, was in the service until the end of the war, be its continuance long or short. He was led to this conclusion by the closing words of the section, "*for the war.*" We, however, see a different reason for the insertion of those words. By the preceding enroll-

ing acts, men were placed in the service " for three years, unless the war shall have sooner ended." The term of service was thus limited, in any event, to three years, and might be sooner terminated by the return of peace. That policy was changed by the act of February 1864. The limit to three years was abandoned, and unless relieved by some supervening exemption, those brought into the army by that act were declared in the service " for the war." But, since the descriptive part of the section designates men between the ages of seventeen and fifty years, what authority is there for holding a man to service after he shall have exceeded the latter age? Does not the fact of his having passed that limit exempt him by operation of law? He no longer answers the description. But, it is said, he did answer it at the time of the passage of the act. This reply is unsatisfactory, because the phraseology used does not refer to that time only. The words of time employed are "*From* and *after* the passage of this act." "*From*," in this connection, means *at the time of*, and "*after*" embraces *all subsequent time*, within the scope of the act. In this view, age would seem to be a test of liability to service, running through the whole term of the war. Had the Congress intended that men once in service under that act, should be held to it until the end of the war, that intention would have been more clearly expressed thus: " All white men between the ages of seventeen and fifty years *at the time of the passage of this act*, shall be," etc. Such is the phraseology used in the enrolling acts of April and September 1862. Why this change in a form of expression used on two former occasions, if there were no change of intention? It is worthy of remark, that in those previous acts, wherein the intention to make age at the time of the call to service the test of liability throughout the term, is very apparent, the term is limited by the lapse of years, and not by the duration of the war; and, moreover, the whole term (three years) added to the maximum age fixed in those acts, would leave the discharged soldier short of the maximum age specified in the act of Feb. 1864.

The Congress may well have supposed that, as a general rule, a man enrolled whilst under forty-five years of age, would be capable of service during three years to come. That supposition could not be reasonably applied to a man enrolled when just short of fifty, for service during the war. Thus, then, we see in the change of phraseology, an abandonment of the rule, (in respect of age,) " once in, in for the whole term ;" and further, we see in the extension of the military age from forty-five to fifty years, and in the indefinite prolongation of the term, reasons for that abandonment.

Thus far we have considered only the letter of the statute, taken *per se.*, and also as compared with the letter of previous statutes in *pari materia.* We look now to its spirit and intention. A man fully fifty years of age, but no more, being a proper subject for exemption, we cannot suppose that one forty-nine years and eleven months old was regarded by the Congress as reasonably bound to service during the whole of a war which may continue ten years longer.

Again, any rule of construction adopted regarding age as a qualification or disqualification for service, must be applicable to the minimum as well as to the maximum limit. If a person aged forty-nine years and eleven months at the time of the passage of the act, be held liable to service throughout the war ; by the same method of interpretation, a person aged at that time sixteen years and eleven months, must be held exempted throughout the war. There is no escape from this consequence. Can we suppose that this was in the contemplation of the Congress? Could they have intended to give continuous exemption to one who is daily waxing stronger and stronger—increasing in soldierly qualities ; and at the same time, to fix continuous service upon one who has passed the grand climacteric of human life—whose manly vigor is steadily wearing with the efflux of time ? We give them credit for wiser and more humane purposes.

Our attention has been called to the following decision of the Supreme Court of North Carolina, appearing in one of

the gazettes of the day, which, as it bears the signature of one of the Judges of that Court, we take as authentic :

*Decision of the Supreme Court of North Carolina, in the matter of Edward Haswell.*

"This case turns upon the principles considered in the case of Goodson, decided at this term, but the facts of the case being different, we are conducted to a different conclusion.

The petitioner was forty-five years of age in May last. He had been exempted anterior to the passage of the law of the 17th of February, as a miller. After the passage of that act, viz : in the month of March, he was enrolled, and another exemption paper given, which, after the act of February repealing exemptions in such causes, could only operate as a furlough or detail. He was afterwards, viz : on the 10th of June, ordered into camp ; he applied for a detail ; this was refured ; he was again ordered into camp, and sued out the writ.

The enrollment and detail which took place in March, about two months before he reached the age of forty-five, fixed his "status" as a soldier. He was properly enrolled in the body of the regular troops, where the term of service for the war, is prescribed by the acts of 1862.

*Per curiam.* The petioner must be remanded to custody, and the costs taxed up against him.

(Signed.)　　　　　　　　　　M. E. MANLY, J.

NOTE.—It will be remembered that in Goodson's case, he was not enrolled until after he was forty-five years old—it was decided that he belonged to the senior reserves."

We would certainly deeply regret, to find ourselves disagreeing, upon any question of law, with our distinguished brethren of that Court ; but this reported case places us in no such unpleasant relation to them. It turned upon a construction of the acts of 1862. The first of those acts is in these words : " That the President be, and he is hereby authorized to call out and place in the military service of the Confederate States, for three years, unless the war shall have

24

been sooner ended, all white men who are residents of the Confederate States, between the ages of eighteen and thirty-five years *at the time of the passage of this act, etc.*" The other act is in *totidem verbis,* except that the ages designated are thirty-five and forty-five years. We are construing the act of 1864, and have already dwelt upon the difference in language between it and the preceding acts. We think the plaintiffs in error were entitled to their discharges.

The judgments below are reversed.